IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MAGDALENA EUBANK, | § | |
| | § | |
| Plaintiff | § | |
| | § | Civil No. 1:15-cv-1019 |
| -v- | § | |
| | § | |
| LOCKHART INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| | § | |
| Defendant. | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES Plaintiff Magdalena Eubank and files Plaintiff's Original Complaint.

In fall 2014, Ms. Eubank asked for accommodations for her diabetes, vertigo, and plantar fasciitis. Instead of accommodating Ms. Eubank, Lockhart Independent School District paid over $121,461 of taxpayer money to at least eight different lawyers and a hearing examiner to fire Ms. Eubank because of her requests for accommodation, complaints of discrimination, and her filing a charge of discrimination with the Equal Employment Opportunity Commission. Lockhart ISD's actions violate both state and federal discrimination and retaliation laws, as well as both the United States and Texas Constitutions.

I
PARTIES

1.    Plaintiff Magdalena Eubank is an individual who resides in Hays County, Texas.

---

2.  Defendant, Lockhart Independent School District ("Lockhart ISD"), is local governmental unit or municipality located in Caldwell County, Texas. Lockhart ISD can be served through its superintendent at 105 S. Colorado, Lockhart, TX 78644.

## II
## JURISDICTION AND VENUE

3.  This Court has original jurisdiction to hear this complaint under 28 U.S.C. § 1331, this action being brought under 42 U.S.C. § 2000e et seq., 42 U.S.C. 12101 et seq, and 42 U.S.C. § 1983.

4.  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, these claims being so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

5.  Venue is appropriate because the acts giving rise to this lawsuit occurred within Caldwell County, Texas in the Western District of Texas.

## III
## FACTS

6.  Ms. Eubank first started working for Lockhart ISD in August 2007 as a kindergarten teacher.

7.  In 2010, Ms. Eubank applied and was selected for the ninth grade counselor position within Lockhart ISD at the freshman campus.

8.  During her employment with Lockhart ISD, Ms. Eubank received excellent reviews, including several exemplary evaluations.

9.      Prior to the events outlined below, Ms. Eubank had never been reprimanded, disciplined or counseled for her performance.

10.     In 2010, Ms. Eubank was diagnosed with Type II Diabetes, a disability under the ADA.

11.     The principal of the freshman campus at the time accommodated Ms. Eubank's disability by allowing her to attend doctors' appointments during the day, take breaks to check glucose levels, and to dispose of lancets in the hazardous waste bin in the nurse's office.

12.     In May 2013, Ms. Denisha Presley became the principal of the freshman campus.

13.     Ms. Eubank requested the same accommodations for the same disabilities as she had under the previous principal.

14.     Unfortunately, under Denisha Presley, Lockhart ISD began discriminating and retaliating against Ms. Eubank because of her disabilities and her requests for accommodation.

15.     For example, Ms. Presley refused to allow Ms. Eubank to attend doctor's appointments during the school day unless a half-day off was taken.

16.     Ms. Presley instructed the staff to no longer accommodate Ms. Eubank's disability.

17.     Ms. Presley prohibited Ms. Eubank from disposing of lancets in the hazardous waste bin.

18. Ms. Presley removed Ms. Eubank from the counselor's office and placed her in the open-access registrar's office, where Ms. Eubank could not counsel students.

19. When Ms. Eubank complained that she could not do her job at that location because of confidentiality concerns, Ms. Presley told her to use a second floor storage room for her meetings.

20. Ms. Presley also took away Ms. Eubank's access to Skyward electronic student records, which prevented Ms. Eubank from doing her job.

21. These acts were motivated by Ms. Eubank's disability and her request for an accommodation.

22. At the beginning of September 2013, Ms. Eubank applied for FMLA leave.

23. On September 4, 2013, Ms. Eubank had a meeting with Ms. Presley in which she told her that she was applying for FMLA leave due to her disabilities.

24. Ms. Presley then sent Ms. Eubank a letter of reprimand regarding her taking of FMLA leave.

25. Ms. Eubank also has rheumatoid arthritis and plantar fasciitis.  Rheumatoid arthritis has caused Ms. Eubank to have joint problems.  Plantar fasciitis impacts her ability to walk.

26. Prior to fall 2013, Ms. Eubank had keys to the Freshman campus.  This allowed Ms. Eubank to enter through a side door instead of the main entrance, which accommodated her walking disability.

27.   However, Ms. Presley took Ms. Eubank's keys to prevent her from using the side entrance.

28.   When Ms. Eubank told Ms. Presley that she needed the keys so that she could enter the side door because of her walking disability, Ms. Presley refused to give her back her keys.

29.   Furthermore, the head janitor was not permitted to unlock the side door before 7:30 am, which had always been done before for Ms. Eubank.

30.   Ms. Eubank filed a grievance with LISD about this discrimination and failure to accommodate and specifically mentioned that she would go to the EEOC about this discrimination.

31.   Assistant Superintendent Dan Vera then granted all of Ms. Eubank's requested accommodations.

32.   Dan Vera also assigned Cristina Suarez, a reasonable accommodation specialist, to Ms. Eubank to ensure that her reasonable accommodations were provided.

33.   Dan Vera also agreed to transfer Ms. Eubank to Bluebonnet Elementary for the remainder of the year.

34.   Under Principal Barbara Bernal, Ms. Eubank excelled.

35.   In fact, for her 2013-2014 performance evaluation, Ms. Eubank exceeded expectations in at least ten distinct categories, including performance of counseling duties, developing and maintaining effective relationships with

students and parents, initiating activities to meet school and community needs, and being willing to help perform other duties.

36. Based on this excellent review, Ms. Bernal recommended that Ms. Eubank continue employment with the district.

37. At that time, Ms. Eubank still had one year left on her two year contract.

38. Despite not having to provide a new employment contract, the Board voted unanimously to offer Ms. Eubank a new two-year employment contract.

39. Ms. Eubank signed the contract.

40. Ms. Bernal retired from LISD before the start of the 2014-15 school year.

41. A new superintendent, Rolando Trevino, was also hired by Lockhart ISD.

42. Mr. Trevino installed Rita Sotelo as principal at Bluebonnet.

43. Ms. Sotelo had never been the principal of a school prior to her position at Bluebonnet.

44. Ms. Eubank requested ADA accommodations and an ADA accommodation meeting on August 18, 2014. Ms. Sotelo acknowledged that she received the request, that she understood Ms. Eubank's disability and was granting the accommodations.

45. However, Ms. Eubank knew that LISD policy required that she have a formal ADA meeting.

46. When Ms. Eubank brought up that fact, Ms. Eubank's accommodations were withdrawn, but no meeting was scheduled.

47.   When Ms. Eubank complained to Cristina Suarez about her reasonable accommodations not being approved, Ms. Suarez told Ms. Eubank that "Ms. Sotelo was acting on instructions" from Dan Vera.

48.   After Ms. Eubank complained, Ms. Sotelo stepped up the discrimination and retaliation.

49.   Ms. Eubank had to take leave on September 17 because she was experiencing vertigo symptoms.

50.   When Ms. Eubank tried to return to work the next day and provided a work release, Ms. Sotelo told her that the release was not sufficient.

51.   Ms. Sotelo then forced Ms. Eubank to use up her personal leave while Ms. Eubank waited to get another appointment with her doctor.

52.   When Ms. Eubank returned to work, Ms. Sotelo wrote up Ms. Eubank for absenteeism.

53.   Ms. Sotelo also assigned Ms. Eubank to act as a crossing guard.

54.   When Ms. Eubank informed Ms. Sotelo that she has spells of vertigo, which would make it unsafe for her to perform crossing guard duties and would endanger children, Ms. Sotelo wrote her up for not performing her duties.

55.   During this time, Ms. Eubank repeatedly asked for accommodations and complained of discrimination and retaliation from Ms. Sotelo and Mr. Vera.

56.   Mr. Vera took these accusations "personally."

57.   Ms. Eubank also sent a letter to some faculty and staff at Bluebonnet complaining of the working conditions, her treatment by Ms. Sotelo, and seeking support in making the conditions better.

58.   Then Superintendent Trevino found out that Ms. Eubank had complained about his goddaughter, Ms. Sotelo.

59.   According to a recording of a meeting between Ms. Eubank and Mr. Trevino, Superintendent Trevino told Mr. Vera to deal with Ms. Eubank because of the complaints.

60.   Based on Superintendent Trevino's instructions, Dan Vera told Ms. Eubank that he was going to get the Superintendent to recommend her termination unless she resigned.

61.   When Ms. Eubank refused to resign simply because she was asking for reasonable accommodations, Dan Vera unilaterally removed her as a counselor, banned her from the campus and refused to let her get her personal belongings.

62.   Ms. Eubank then had to beg Dan Vera to allow her to get her medications from the school campus.

63.   Ms. Eubank was only allowed to collect her medications with a police escort, who walked Ms. Eubank through the halls of Bluebonnet in full view of other faculty, parents, and students.  No other teacher has been treated that way.

64. The following Monday, Dan Vera assigned Ms. Eubank to a storage room known as "the dungeon" in the Special Education Building and ordered her not to talk to anyone.

65. From November 3, 2014 until March 12, 2015, Ms. Eubank was forced to work in "the dungeon."

66. Ms. Eubank filed two grievances against Dan Vera with LISD because of this discrimination and retaliation.

67. Both grievances were directed to the Superintendent.

68. LISD policy requires the Superintendent hear grievances concerning discrimination.

69. Dan Vera, in violation of LISD policy, then assigned his fellow assistant superintendent, Larry Ramirez to hear one of the grievances.

70. Mr. Ramirez is notorious for covering up unlawful activity by LISD faculty and staff.

71. In 2012, Mr. Ramirez was sued by parents of children in Lockhart ISD for covering up an improper relationship between a coach and a sixteen year old girl.

72. According to the lawsuit, Mr. Ramirez was informed on September 19, 2011, that the coach had kissed a female student on the cheek. In violation of the law, Mr. Ramirez never reported this incident to authorities and only minimally investigated it. Then, Mr. Ramirez did nothing until another

student complained over a month later.  Even then, Mr. Ramirez waited three days before putting the coach on paid leave.

73.   When Mr. Ramirez found out that he was going to hear Ms. Eubank's grievance, but before the actual hearing or review of any evidence, he told Ms. Eubank that she should resign or retire.

74.   Unsurprisingly, Mr. Ramirez, as he had with the coach in 2011, found no wrongdoing by the employer that pays his salary.

75.   Four days later, Dan Vera had the Superintendent propose that Ms. Eubank's two-year contract be terminated after only a few months.

76.   The Board, after meeting with their attorneys for over one and half hours, voted to accept the proposal of termination based on different reasons from what Dan Vera told Ms. Eubank.

77.   Over the next five months, according to open records requests, LISD would spend over $120,000 in taxpayer money on eight different attorneys to get rid of Ms. Eubank because she had asked for an accommodation.  This is more than two years of Ms. Eubank's salary.

78.   When Dan Vera placed Ms. Eubank in the "dungeon" he failed to provide reasonable accommodations for her disability.

79.   When Ms. Eubank asked Dan Vera to clarify what accommodations were being given to her, Mr. Vera refused to answer, stating "I ask you at this time to cease harassing me and my staff with accusations and questions that have

already been answered and speak to our attorney from this day forward concerning matters of your recommended termination."

80.   On December 16, 2014, the Board proposed Ms. Eubank for termination.

81.   On January 7, 2015, Dan Vera met with LISD attorneys regarding whether Superintendent Trevino's actions violated the law.

82.   When Mr. Trevino found out about that meeting, he retaliated by demoting Mr. Vera to grant writer and LDMC administrator.

83.   In February, under the Texas Education Code §21.255(e), LISD paid a hearing examiner to conduct a hearing for Ms. Eubank's proposed termination.

84.   During the hearing, Rita Sotelo, under oath, stated that Ms. Eubank's complaints of discrimination and retaliation were the unprofessional and insubordinate actions that Ms. Eubank was being terminated for.

85.   Additionally, Ms. Sotelo stated in written interrogatories that the false statements Ms. Eubank was being terminated for consisted of her complaints of discrimination and retaliation.

86.   According to Dan Vera's testimony, one of the reasons for the disciplinary meeting with Ms. Eubank on October 31, 2014 was Ms. Eubank's complaints of discrimination and retaliation.

87.   Despite this, the hearing examiner paid by LISD found that Ms. Eubank engaged in unprofessional and insubordinate activity when she complained about disability discrimination and retaliation.

88.    According to the written decision of the hearing examiner, Ms. Eubank's unprofessional and insubordinate activity consisted of:

    (a)    "Eubank introduced the subject of the ADA and medical leave in her response so as to accuse Sotelo of harassment for issuing the Directive."

    (b)    "Eubank partially addressed the small-group issue and accused Sotelo of making false accusations and harassing her because [Eubank] had provided a medical letter to request health related accommodations."

    (c)    Ms. Eubank sent an email to Mr. Vera's assistant stating "But [Vera] chose to do what he did last year 2013—negate needed accommodations and to treat me like a criminal."

    (d)    Ms. Eubank sent a letter to school faculty stating, "I am having tremendous difficulties this school year working with our new principal, Ms. Sotelo.  Many of you have first hand knowledge of the extreme stress I have been under because of her accusations and actions, and the effect it has had on my health."

    (e)    Ms. Eubank sent an email to Mr. Vera complaining of retaliation stating, "I've heard nothing from you about this assignment until now.  I had been filing for SPED I thought I was to be detained in the storage room until you completed your bad deeds."

89.    At the same time, Superintendent Trevino was removed from his position, in part, because of his actions regarding Ms. Eubank.

90.    Dan Vera has described Mr. Trevino's actions as "crazy."

91.    At a board meeting on March 12, 2015, LISD reiterated that Ms. Eubank should be fired because of her complaints of discrimination and retaliation.

92.    At the Board meeting, Ms. Eubank again complained that she was being terminated in retaliation for her complaints of discrimination and retaliation.

93.    After hearing Ms. Eubank's complaints of discrimination and retaliation, the board terminated her because of them.

94.    Specifically, the Board terminated Ms. Eubank for unprofessional and insubordinate behavior because of the following acts:

(a)   "Eubank introduced the subject of the ADA and medical leave in her response so as to accuse Sotelo of harassment for issuing the Directive."

(b)   "Eubank partially addressed the small-group issue and accused Sotelo of making false accusations and harassing her because [Eubank] had provided a medical letter to request health related accommodations."

(c)   Ms. Eubank sent an email to Mr. Vera's assistant stating "But [Vera] chose to do what he did last year 2013—negate needed accommodations and to treat me like a criminal."

(d)   Ms. Eubank sent a letter to school faculty stating, "I am having tremendous difficulties this school year working with our new principal, Ms. Sotelo.  Many of you have first hand knowledge of the extreme stress I have been under because of her accusations and actions, and the effect it has had on my health."

(e)   Ms. Eubank sent an email to Mr. Vera complaining of retaliation stating, "I've heard nothing from you about this assignment until now.  I had been filing for SPED I thought I was to be detained in the storage room until you completed your bad deeds."

95.   Shortly afterwards, Ms. Sotelo was demoted and transferred because of her actions regarding Ms. Eubank.

96.   Ms. Sotelo has since left LISD.

97.   In the last five years, Ms. Eubank is the only teacher who has complained of disability discrimination and retaliation.

98.   In the past 10 years, at least four other employees have been forced to resign by Dan Vera, Larry Ramirez, and LISD because of medical issues.

99.   Ms. Eubank filed a charge of discrimination with the EEOC on January 26, 2015.

100.  On November 2, 2015, Ms. Eubank received her right to sue.  On November 9, 2015, Ms. Eubank requested her right to sue from the Texas Workforce Commission.

101.  All conditions precedent to the filing of this suit have been met.

IV

### FIRST CAUSE OF ACTION: ADA DISCRIMINATION

102. Plaintiff incorporates paragraphs 1-101 as if restated herein.

103. Defendant is an employer under the Americans with Disabilities Act.

104. Plaintiff has a disability under the Americans with Disabilities Act.

105. Plaintiff requested accommodations for her disabilities.

106. Defendant failed to accommodate Plaintiff.

107. Defendant violated the ADA when it disciplined, proposed for termination, and terminated Plaintiff because of her disabilities and requests for accommodation.

### V
### SECOND CAUSE OF ACTION: ADA RETALIATION

108. Plaintiff incorporates paragraphs 1-107 as if restated herein.

109. Plaintiff engaged in protected activity when she requested accommodations and complained about discrimination and retaliation to her principal, supervisor, and the LISD Board of Trustees.

110. Defendant violated the ADA when it disciplined, proposed for termination, and terminated Plaintiff for engaging in those activities.

### VI
### THIRD CAUSE OF ACTION: TEXAS LABOR CODE DISCRIMINATION

111. Plaintiff incorporates paragraphs 1-107 as if restated herein.

112. Defendant is an employer under Chapter 21 of the Texas Labor Code.

113. Plaintiff has a disability under the Chapter 21 of the Texas Labor Code.

114. Plaintiff requested accommodations for her disabilities.

115. Defendant failed to accommodate Plaintiff.

116. Defendant violated the Texas Labor Code when it disciplined, proposed for termination, and terminated Plaintiff because of her disabilities and requests for accommodation.

## VII
## THIRD CAUSE OF ACTION: TEXAS LABOR CODE RETALIATION

117. Plaintiff incorporates paragraphs 1-116 as if restated herein.

118. Plaintiff engaged in protected activity when she requested accommodations and complained about discrimination and retaliation to her principal and the LISD Board of Trustees.

119. Defendant violated the Texas Labor Code when it disciplined, proposed for termination, and terminated Plaintiff for engaging in that activity.

## VIII
## FOURTH CAUSE OF ACTION: FEDERAL FREE SPEECH RETALIATION

120. Plaintiff incorporates paragraphs 1-119 as if restated herein.

121. Plaintiff engaged in speech concerning a matter of public concern when, among other things, she complained about LISD's policy of discrimination and retaliation, working conditions, and "district or campus business" to school officials and administrators.

122. Defendant was motivated by Plaintiff's speech to terminate her.

123. Lockhart ISD is liable under 42 U.S.C. § 1983 because it officially adopted and promulgated the decision to terminate Ms. Eubank for engaging in protected speech. Lockhart ISD is also liable because the decision to

terminate Ms. Eubank was made by officials to whom the District had delegated policy-making authority.

124. Defendant violated the United States Constitution when it terminated Plaintiff for engaging in protected speech.

IX
FIFTH CAUSE OF ACTION: STATE FREE SPEECH RETALIATION

125. Plaintiff incorporates paragraphs 1-124 as if restated herein.

126. Plaintiff engaged in speech concerning a matter of public concern when, among other things, she complained about LISD's policy of discrimination and retaliation, working conditions, and "district or campus business" to school officials and administrators.

127. Defendant was motivated by Plaintiff's speech to terminate her.

128. Lockhart ISD is liable because it officially adopted and promulgated the decision to terminate Ms. Eubank for engaging in protected speech.  Lockhart ISD is also liable because the decision to terminate Ms. Eubank was made by officials to whom the District had delegated policy-making authority

129. Defendants violated article 9 of the Texas Constitution when it terminated Plaintiff for engaging in protected speech.

X
JURY DEMAND

130. Plaintiff demands trial by jury and will tender the appropriate fee.

XI

DAMAGES

131.   Plaintiff seeks all damages allowed under the law, including monetary relief

and:

(a)   Plaintiff seeks an injunction prohibiting Defendant from

engaging in unlawful practices.

(b)   Plaintiff seeks additional equitable relief as may be appropriate

such as reinstatement, promotion, back pay, front pay, and court costs.

(c)   Plaintiff seeks compensatory damages for future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses.

(d)   Plaintiff seeks reasonable attorney's fees and costs including

reasonable expert fees.

(e)   Plaintiff seeks pre and post judgment interest at the maximum

rate allowed by law.

WHEREFORE, premises considered, Plaintiff respectfully prays that

Defendant be cited to appear and, that upon a trial on the merits, that all relief

requested be awarded to Plaintiff, and for such other and further relief to which

Plaintiff is justly entitled.

Respectfully submitted,
ROB WILEY, P.C.

By:  _/s/ Colin Walsh_
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified Specialist, Texas Board of*

*Legal Specialization, Labor and Employment
Law*
Colin Walsh
Texas Bar No. 24079538

ROB WILEY, P.C.
1011 San Jacinto Blvd., ste 401
Austin, TX 78701
Telephone: (512) 27-5527
Facsimile:  (512) 287-3084
cwalsh@robwiley.com
ATTORNEYS FOR PLAINTIFF