IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MAGDALENA EUBANK, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil No. 1:15-CV-01019-RP |
| | § | |
| LOCKHART INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| Defendant. | § | |

---

### AFFIDAVIT OF BRIDGET ROBINSON

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared BRIDGET

ROBINSON, known to me to be the person whose signature appears below and, having been by me

duly sworn, the said BRIDGET ROBINSON stated on oath as follows:

1.   "My name is BRIDGET ROBINSON.  I am over 18 years of age.  I have
     never been convicted of a crime and am personally competent to make this
     affidavit.  I have personal knowledge of all facts stated in this affidavit, and
     they are all true and correct."

2.   "I am the attorney of record for Defendant Lockhart Independent School
     District (the "District") in the above-referenced lawsuit.  I was retained on or
     about November 17, 2015 to represent the District in the above-referenced
     lawsuit which was filed against the District by Plaintiff Magdalena Eubank.
     Throughout the course of this litigation, I personally represented the District
     in its defense against Plaintiff's claims and also supervised associate
     attorneys and support staff, including paralegal staff, who assisted me with
     necessary duties in the course of representing the District in this case.  I have
     been licensed to practice law in the State of Texas since 1988.   I have been
     board certified in civil trial law by the Texas Board of Legal Specialization
     since December 1993."

3.   "On November 9, 2015, Plaintiff filed suit claiming that her termination

**EXHIBIT A**

amounted to disability discrimination in violation of the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA"). [Docket Entry "DE" 1]. She also raised retaliation claims under the ADA, the TCHRA, and the First Amendment. *Id."*

4.   "Discovery commenced and on March 29, 2016, Defendant served Plaintiff with its First Request for Admissions, First Set of Interrogatories, and First Requests for Production.  [DE 35-1].   Plaintiff served Responses to Defendant's Discovery Requests on April 29, 2016.  [DE 35-2].  However, because there were a number of deficiencies in Plaintiff's Responses to Defendant's First Set of Interrogatories and Defendant's Requests for Production, Defendant tried in good faith to confer with Plaintiff's counsel by sending a letter regarding discovery deficiencies on July 7, 2016. [DE 35-3, pp. 1-6].  When Plaintiff's counsel did not respond, undersigned counsel attempted to confer again about these issues by letter dated July 22, 2016. [DE 35-3, pp. 7-8]. Mere minutes after receiving the second letter, Plaintiff's counsel faxed a cursory response, refusing to address the specific issues that were raised.  [DE 35-3, p. 9].  As a result, undersigned made yet another attempt on July 25, 2016, to resolve, in good faith, the discovery issues that remained pending.  [DE 35-3, pp. 10-12].  Yet, despite having had ample time within which to supplement responses and comply with discovery rules, Plaintiff still failed to address the specific matters that were raised and provided only a hasty response on July 29, 2016, supplementing only response to Interrogatory No. 6 because it was never included in Plaintiff's original discovery responses.  [DE 35-3, pp. 13-14].  As Defendant was hoping to resolve these matters prior to taking Plaintiff's deposition, undersigned counsel yet again attempted to confer with Plaintiff's counsel on August 12, 2016, to resolve all pending discovery issues.  [DE 35-3, pp. 15-22].  It was not until August 19, 2016 that Plaintiff served supplemental responses; yet still refused to address the majority of pending discovery issues.  [DE 35-3, pp. 23-26]  In fact, Plaintiff only addressed Interrogatories 6, 15, 17, 24 and offered no supplementation to Defendant's Requests for Production of Documents.  [DE 35-3, pp. 23-26].  On August 26, 2016, undersigned counsel made one last attempt to resolve these issues prior to seeking the Court's intervention. [DE 35-3, pp. 27-28]."

5.   "On September 6, 2016, Defendant filed a Motion to Compel and Motion for Sanctions with supporting exhibits.  [DE 35 thru 35-4].  Plaintiff responded on September 30, 2016.  [DE 38 thru 38-2].  Defendant then filed its Reply on October 7, 2016.  [DE 39 thru 39-1].  Because of conduct by Plaintiff's counsel during Plaintiff's deposition, including multiple improper instructions for Plaintiff not to answer valid deposition questions, Defendant filed a Supplemental Motion to Compel and Motion for Sanctions on October

28, 2016.  [DE 41 thru 41-1].  Plaintiff moved to strike the Supplemental Motion to Compel on November 1, 2016. [DE 46 thru 46-2]."

6.   "The Court conducted a hearing on Defendant's Motion to Compel and Motion for Sanctions and Supplemental Motion to Compel and Motion for Sanctions on November 1, 2016.  [DE 45]."

7.   "I, the associate attorneys and paralegal assisting me have spent more than 109 hours in an effort to resolve pending discovery disputes with Plaintiff's counsel.  All services rendered to the District were reasonable and necessary to adequately defend this case, particularly considering Plaintiff's repeated failure to provide proper responses to valid discovery requests."

8.   "At all times during the provision of legal services to the District, all attorneys, including myself, and paralegal staff kept contemporaneous records of all time expended and work performed in the defense of this case.  I have reviewed the invoices in this case and they are summarized in detail below."

9.   "From the inception of this litigation until June 30, 2016, my law firm charged an hourly fee of $185.00 for my services as a shareholder in this law firm and as a board-certified attorney with more than 25 years of experience representing school districts.  The firm charged an hourly fee of $125.00 and 165.00 for the necessary assistive legal services rendered by associate attorneys, including Joey Moore and Jennifer Childress respectively. Finally, the firm charged an hourly fee of $65.00 for the necessary assistive legal services rendered by paralegals.  Beginning on July 1, 2016, my law firm charged an hourly fee of $205.00 for my services as a shareholder, $165.00 and 190.00 for legal services rendered by associate attorneys, including Joey Moore and Jennifer Childress respectively, and $75.00 for legal services rendered by paralegals."

10.   "The total amount of legal fees charged for work performed by attorneys related to Defendant's efforts to obtain proper discovery responses from Plaintiff is approximately $16,750.50. The total amount of legal fees charged for work performed by paralegals during the same period is approximately $1,702.50. That work included the following: (1) conferring with Plaintiff's counsel multiple times concerning the discovery disputes at issue by correspondence, telephone and email; (2) conducting legal research and analysis in support of Defendant's Motion to Compel; (3) preparing Defendant's Motion to Compel and Motion for Sanctions; (4) reviewing Plaintiff's Response and evidence; (5) preparing Defendant's Reply brief; (6) conducting legal research and analysis in support of the Reply brief; (7) conducting legal research and analysis in support of Defendant's

Supplemental Motion to Compel; (8) preparing Defendant's Supplemental Motion to Compel and Motion for Sanctions; (9) preparing for and attending the November 1, 2016 hearing on Defendant's Motion to Compel; (10) reviewing and responding to Plaintiff's Motion to Strike Defendant's Supplemental Motion to Compel; and (11) preparing this Motion for Attorney's fees and affidavit in support."

11.    "In an effort to provide the Court with more detailed information regarding the lodestar amount of attorneys' fees incurred by the District as a direct result of Plaintiff's counsel's vexatious discovery tactics, I have carefully reviewed and analyzed the fee invoices containing the contemporaneous records of all time expended and work performed as outlined in Defendant's Motion to Compel and Motion for Sanctions and Supplemental Motion to Compel, and I have determined the following.

12.    "In connection with the multiple efforts to confer with Plaintiff's counsel to resolve the discovery disputes [DE 35-3], attorneys' fees were incurred for shareholder and associate services in the amount of $2,636.50, and fees were incurred for work performed by paralegal/law clerk staff in the amount of $825.00, for a total amount of $3,461.50."

13.    "In connection with Defendant's Motion to Compel and Motion for Sanctions [DE 35], attorneys' fees were incurred for shareholder and associate services in the amount of $5,633.00, and fees were incurred for work performed by paralegal/law clerk staff in the amount of $22.50, for a total amount of $5,655.50. This includes legal research, reviewing and analyzing Plaintiff's response, and drafting Defendant's Reply."

14.    "In connection with Defendant's Supplemental Motion to Compel and Motion for Sanctions [DE 41 thru 41-1] and Plaintiff's Motion to Strike as Untimely Defendant's Supplemental Motion to Compel and Motion for Sanctions [DE 46 thru 46-2], attorneys' fees were incurred for shareholder and associate services in the amount of $3,509.50. This includes legal research."

15.    "In connection with the hearing on Defendant's Motion to Compel and Defendant's Supplemental Motion to Compel [DE 45], attorneys' fees were incurred for shareholder and associate services in the amount of $3,698.50."

16.    "In connection with Defendant's Supplemental Motion for Sanctions regarding attorneys' fees filed contemporaneously with this Affidavit, attorneys' fees were incurred for shareholder and associate services in the amount of $1,273.00, and fees were incurred for work performed by

paralegal/law clerk staff in the amount of $855.00, for a total amount of $2,128.00."

17.   "The total amount of attorneys' fees charged and to be charged, as outlined in paragraphs 12 through 16 above are $16,750.50, and the total amount of paralegal/law clerk fees are $1,702.50."

18.   "The foregoing lodestar amounts are reasonable and sufficient for the award of attorneys' fees, which does not necessitate any modification. The lodestar includes reasonable hourly rates that are reasonably charged in the relevant legal community based on skill and experience. The fees that I have charged in connection with my representation of the District in this case are reasonable and customary in Austin, Texas for the same or similar services by an attorney with my experience, reputation, and ability and considering the nature of the controversy, the time limits imposed, the results compared with results in similar cases, and the nature and length of my and our law firm's relationship with the District. Likewise, the fees that have been charged by other attorneys and paralegals of my firm are reasonable and customary in Austin, Texas for the same or similar services by an attorney and paralegal with their experience, reputation, and ability and considering the nature of the controversy, the time limits imposed, the results compared with results in similar cases, and the nature and length of our law firm's relationship with the District."

FURTHER, THE AFFIANT SAYETH NOT.

Signed this 8th day of November, 2016.



BRIDGET ROBINSON


SUBSCRIBED AND SWORN TO BEFORE ME by the said BRIDGET ROBINSON on this 8th day of November 2016, to certify which witness my hand and official seal.

B.D. WILKS
Notary Public, State of Texas
Expires APRIL 28, 2018
I.D.# 5453669

_____
Notary Public, State of Texas


- 5 -